Cowen, Chief Judge,
delivered the opinion of the court:
Plaintiff, Edward W. Cole, seeks to recover pay and allowances allegedly due him as a Major in the United States Air Eorce upon the ground that he was illegally discharged. Our trial commissioner has made complete factual findings regarding the circumstances surrounding plaintiff’s cl aim; and we need summarize only those facts which are material to the resolution of the issue before us.
As of August 31,1962, the date of his separation under Air Force Regulation 36-2, plaintiff had completed 18 years and *180 3 months of federal service. His career in the Air Force was generally distinguished; he received numerous combat decorations during World War II. It appears, however, that at the times pertinent to this suit plaintiff was suffering from some personal problems.
. ■ Since October 1960, plaintiff had been assigned to Headquarters 839th Air Base Group, Sewart Air Force Base, Tennessee, where he held the position of Base Housing Officer. On October 25,1961, plaintiff received a reprimand imposed pursuant to Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815 (1952 Ed.), because of charges that he had conducted himself in a manner incompatible with exemplary standards of personal conduct in that on October 22, 1961, he was conspicuously drunk and disorderly at the Officers’ Open Mess on the base and that on the day afterward he was drunk on duty. Plaintiff accepted the Article 15 action when he was told that it was being taken in lieu of proceedings to discharge him. Pie was warned that any recurrence of similar conduct would result in a discharge action. There was no repetition of such substandard conduct by Major Cole.
On December 1, 1961, an effectiveness report was issued; it commended plaintiff’s efforts as Base Housing Officer by stating that the Base Housing Supply had received good ratings, whereas before he took command it had been rated “unsatisfactory”. The endorsing official and the Base Commander added their concurrences, noting that plaintiff was making an honest effort to overcome his personal problems. However, on January 5,1962, the Air Division Commander added a final endorsement in which he mistakenly assumed that thq incidents of October 23-24, 1961, which had been noted on the report without benefit of dates, were recurrences of the personal substandard conduct about which plaintiff had been warned. As a result of his erroneous assumption, the Division Commander directed that elimination action be started. In March of 1962, plaintiff was notified to appear before a Board of Inquiry to show cause why he should be retained in the Air Force. Thus, as a direct consequence of the General’s error, there was started a chain of events which culminated in plaintiff’s discharge and the loss of valuable *181 rights which plaintiff would have received had he remained in Service for an additional period of less than 2 years.
In the notice served on plaintiff, he was charged with the following:
1. Major Cole failed to properly discharge his duties as Base Housing Officer in that in early June 1961 he received a lawful order from the Base Commander to have certain quarters painted and made available to a certain party and did thereafter wrongfully fail to do so.
2. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 3 July 1961 he absented himself without proper authority and remained so absent until about 1900 hours 5 July 1961.
3. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 22 October 1961 at the Officers’ Open Mess, Sewart Air Force Base, Tennessee, he was conspicuously drunk and disorderly.
4. Major Cole has failed to demonstrate acceptable qualities of leadership required of an officer of his grade in that on 23 October 1961 he was drunk on duty.
5. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 7 January 1962 he was placed under arrest by a patrolman of the Tennessee Highway Patrol and on 15 January 1962 was found guilty of operating a vehicle with defective headlights and without a valid operator’s license.
6. Major Cole has demonstrated a progressive falling off of duty performance resulting in an unacceptable standard of efficiency.
On April 25,1962, plaintiff and his military counsel were placed on temporary duty at Headquarters Tactical Air Command, Langley Air Force Base, Virginia, for the Board of Inquiry proceeding convened under Air Force Regulation 36-2. The Major General, who, as Deputy for Personnel of the Tactical Air Command and acting for the Commander, Tactical Air Command, had ordered the Board to convene to consider Major Cole’s case, appeared before the Board after all persons concerned with the hearing had assembled. He told plaintiff and Ms counsel to leave the room. Recognizing that all but one of the members of the Board had previously heard the prepared briefing statement he had *182 intended to read, the General handed it to the officer who had not seen it. That officer read it to himself, whereupon the Deputy for Personnel left the room, plaintiff and his counsel returned, and the hearing proceeded.
The text of the briefing statement was as follows:
In successfully meeting the increasing obligations of the Air Force in our nation’s defense, it is vitally important that our officer corps be maintained at the highest quality possible. As members of this Board your job is an important one. If we are to improve the quality of our officer corps, our Boards of Inquiry must be thorough in their actions.
You have been furnished a file containing information which has been carefully evaluated by a Board of Officers in Headquarters TAC. The members of that Board have determined from the information furnished them that the respondent should show cause why he should not be relieved from active duty and discharged from all commissions and appointments in the USAF. The burden rests with the respondent to present evidence to refute, rebut or mitigate the evidence presented by the Air Force. The privilege to serve as an officer is one which can and must be withdrawn when his efficiency or conduct does not measure up to the high standards expected of an Air Force officer.
The Board need not limit itself to the documented case. It may actively seek out additional information which the members feel is required to arrive at a proper finding. The Board should guard against the introduction of irrelevant testimony, evidence or argument, or an unwarranted sympathetic attitude toward the respondent, which might cause the Board to neglect its responsibility to protect the best interests of the Air Force. The Board must carefully weigh and evaluate all facts and its findings and the recommendation must be consistent with the evidence presented. It must be borne in mind by the Board members that a recommendation for retention which is inconsistent with the actual facts of the case can have great impact upon the Air Force and the officer corps particularly for the reason that such recommendation is final and reinitiation of the case without the benefit of new evidence is not possible.
The procedures outlined in the Guidance Manual for Boards of Inquiry adequately protect the interests of the respondent.
*183 A matter of great importance is the type of discharge certificate recommended for officers who are ordered before Boards of Inquiry because of misconduct. The Secretary of the Air Force places great weight on the Board findings; therefore, when discharge is recommended, it is essential that the type of discharge be in consonance with the character of service rendered by the respondent. Boards of Inquiry must insure that a higher type of discharge certificate than warranted is not recommended by them.
The Board of Inquiry must never forget that continued service as an officer is not an inherent right, but is a privilege which may be terminated when such action has been determined to be in the best interest of the Air Force. It is emphasized that the Air Force has no place for officers who show themselves unworthy of officer status by either ineffectiveness or failure to live up to the exemplary standards of conduct and morality demanded therefrom.
The interests of the Air Force being paramount, Board members should exercise extremely high personal vigilance to preclude undue compassion for the respondent affecting their decision. Further, Board members must remain constantly aware of the main issue to be resolved and must not allow that issue to become confused through technicalities or tactics employed by the respondent, or his counsel. It should be emphasized that the Show Cause hearing is administrative in nature and is not subject to the rules and procedures governing court action.
Consideration of the factors which I have just mentioned, together with the procedures outlined in the Guidance Manual and the policies prescribed in AFR 36-2, should enable you to process the case in the best possible manner.
At the conclusion of the hearing, the Board found that the charge of being drunk on duty and the charge of failing to paint certain quarters as ordered by the Base Commander, were not sustained. The Board found against plaintiff on charges two, three, and five. As to charge six, the Board’s finding was:
Major Cole has not demonstrated a progressive falling off of duty performance. However his performance has been average to marginal for an extended period of time. Records also indicate repeated instances of personal conduct incompatible with exemplary standards.
*184 Tlie Board recommended that the plaintiff be discharged from all appointments, that the nature of the separation be honorable, and that he receive readjustment pay.
The file containing the Board’s findings and decision, plus the proceedings relating to Article 15 punishments, the efficiency reports rendered on plaintiff from 1944 to August 81, 1961, and a statement by plaintiff’s commanding officer, was forwarded to the Air Force Personnel Board for final review. Plaintiff filed a brief with the Personnel Board, which reviewed the record and briefs submitted by the parties without benefit of an appearance by plaintiff or counsel. The Board recommended that Major Cole be given a general discharge. In reaching its decision, the Board discussed and relied upon an alleged incident of November 1, 1957, that was not included among the stated reasons for action in the elimination proceeding. Plaintiff had no opportunity to rebut or explain the statement, although the papers relating to the disciplinary punishment imposed under Article 15, on April 17, 1958, as a result of that occurrence, were among the papers made available to the Board of Inquiry.
In his appeal, plaintiff presented the question of command interference, contending that the ex farte briefing of the Board by the Deputy for Personnel outside the presence of the plaintiff, his counsel, and the reporter, constituted an unconscionable attempt to influence and prejudice the Board and deprived plaintiff of his property without due process of law. Plaintiff also asserted that the adverse findings of the Board were unsound as a matter of law or were not supported by the weight of the evidence.
Following a review of the case, the Secretary of the Air Force, on July 27, 1962, directed that plaintiff be honorably discharged from the Air Force.
In view of the findings of fact made by our trial commissioner (findings 14,15,18 and 19), there is a real question as to whether determinations made by the Board of Inquiry on the four charges found adversely to plaintiff are supported by substantial evidence. However, we need not base our decision on the insufficiency of the evidence, because we have *185 concluded that plaintiff is entitled to recover on other grounds.
First, we shall consider the issue of command interference. In order to assess the implications of that action, it is necessary to consider the personalities involved and the setting in which the interference occurred. As previously stated, the Major General who conducted the ex parte briefing was the Deputy for Personnel of the Tactical Air Command. As such, he was the personal representative of the Commander for all personnel matters in the Tactical Air Command. He had signed the letter order which convened the Board of Inquiry, the members of which were drawn from the Tactical Air Command Headquarters of which the Major General was a principal staff officer. His appearance before the Board, the exclusion of plaintiff and his counsel from the briefing-session, and the briefing statement itself combined to provide the mood and to set the stage for a proceeding in which plaintiff could not have hoped for an exoneration. Aside from the obvious overtones of the-briefing which instilled in the board members a sense of duty to aid in the elimination of “unsuitable” officers, the circumstances under which the briefing was conducted and the comments regarding “undue compassion for the respondent,” plus the warning against allowing the main issue of dismissing unworthy officers, “to become confused through technicalities or tactics employed by the respondent, or his counsel,” jeopardized plaintiff’s rights to that due process protection which the Fifth Amendment extends to military personnel. Shapiro v. United States, 107 Ct. Cl. 650, 69 F. Supp. 205 (1947). Cf., Service v. Dulles, 354 U.S. 363 (1957).[1]
As our trial commissioner has pointed out (finding 19a), the Board determined that the sixth charge leveled against plaintiff, namely, that there was a progressive falling off of duty performance on his part, was not sustained. Paragraph 13 of Air Force Regulations (AFR) 36-2 provides that the let *186 ter notifying an officer of bis selection to show cause will carry, as an enclosure, a Statement of Reasons “which will set out in separate numbered paragraphs the basis for the action * * * each paragraph will be complete as to the misconduct, inefficiency, inaptitude, or such other inadequacy alleged and will state with as much particularity as possible dates, places, events, and performance involved.” Despite this provision, the Board went beyond the Statement of Reasons served on plaintiff and found that his performance had been average to marginal for an extended period of time. AER 36-2 A, 5a (13) requires that marginal services over an extended period of time be indicated by effectiveness reports covering two or more assignments and rendered by at least two different officers. The evidence before us discloses only one effectiveness report that may be regarded as marginal. In that report, dated March 12, 1958, the reporting officer rated plaintiff as “an acceptable officer”, but the endorsing officer reduced the rating to marginal. Other effectiveness reports on plaintiff during the applicable period included better than average ratings. Consequently, we hold that the finding made by the Board of Inquiry on the sixth charge was arbitrary and contrary to the regulations of the Air Force. Sofranoff v. United States, 165 Ct. Cl. 170 (1964).
Before his discharge became effective, plaintiff questioned the amount of readjustment pay that had been allowed and requested authorization to reenlist in order to complete the less than 2 years’ service needed for his retirement. Pursuant to the regulations governing reenlistment, the Tactical Air Command at Langley Air Force Base, forwarded plaintiff’s request to Headquarters, United States Air Force. On August 23, 1962, prior to the effective date of plaintiff’s discharge, Headquarters replied that plaintiff’s readjustment pay was to be determined on the basis applicable to officers honorably discharged and that plaintiff might “apply for authority to enlist.” For reasons which are nowhere explained in the record by defendant, neither plaintiff nor his counsel was ever informed of this decision of Headquarters regarding reenlistment. Instead, plaintiff was notified that his request for reenlistment had been denied. After his discharge, plaintiff wrote the Secretary of the Air Force *187 regarding reenlistment and was advised that authority to reenlist had to be established at or prior to the date of separation. Thus, defendant’s failure to notify plaintiff of the decision regarding his reenlistment effectively foreclosed his chances to complete 20 years of service and become eligible for retirement. Since the regulations of the Air Force required that authority to reenlist be established before separation, we view the interference by defendant in the orderly processing of plaintiff’s request as a failure by the Air Force to follow its own regulations. Sofranoff v. United States, supra; Roberts v. Vance, No. 17801, D.C. Cir., June 18, 1964; Service v. Brilles, supra.
We need not decide whether any one of the above-described acts by defendant is sufficient to render plaintiff’s discharge illegal. The elimination action had its genesis in a basic mistake of fact on the part of plaintiff’s Air Division Commander, and the whole fabric of the discharge proceeding is imprinted with arbitrary and capricious incidents.
For the reasons stated, plaintiff is entitled to judgment for his full pay and allowances from August 31, 1962, and judgment is entered to that effect. The amount of the recovery will be determined pursuant to Rule 47(c) (2).
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Robert K. McConnaughey, and the briefs and argument of counsel, makes findings of fact as follows:
1. On August 31, 1962, the plaintiff completed 18 years, 3 months and 11 days of Federal service creditable toward military retirement. During his years of active service, he served with distinction, being awarded the Distinguished Flying Cross, the Air Medal with Nine Oak Leaf Clusters and the European-African Middle Eastern Campaign Medal with three bronze stars. Immediately before his separation, the plaintiff held reserve commissions in the United States Air Force with an active duty grade of major and a permanent Air Force Reserve grade of lieutenant colonel.
2. In approximately October 1960, the plaintiff was assigned to Headquarters 839 Air Base Group, Sewart Air Force Base, Tennessee. There he held the position of Base *188 Housing Officer in command of the Housing Supply Section until he was relieved in the spring of 1962 because of pending elimination action against him..' Immediately before the plaintiff assumed the position of Base Housing Officer, the Housing Supply Section received an unsatisfactory rating. Thereafter, the Blousing Supply Section, under the plaintiff’s command, received excellent ratings.
3. In March of 1962,. the plaintiff was notified to show cause why he should be retained in the Air Force.
4. On March 21, 1962,‘Major General J. E. Roberts, ÜSAF, ordered a Board of Inquiry to. convene to consider the. case of Major Cole. The burden of rebutting the charges was placed on the plaintiff and he was required to show cause why he' should hot be discharged from all appointments held by him in the United States Air Force.
Major General Roberts was the Deputy for Personnel of the Tactical Air Command and, as such, was the principal staff officer in charge of all personnel matters for the command. In issuing the letter ordering the convening of the Board of Inquiry, he signed “For the Commander”.
5. On April 25, 1962, the Board of Inquiry convened at Langley Ait "Force Base, Virginia. The Board was composed of five officers, one of whom was a Reserve officer.
.6. Plaintiff appeared with counsel at the Board proceedings which commenced on April 25,1962, at 8:30. Plaintiff had acknowledged that, on March 12, he had received a copy of the file containing the reasons and supporting papers upon which he had been selected to appear before the Board to show cause why' he should not be discharged from the Air Force.
7. The supporting papers included proceedings relating to Article 15 Punishments, imposed October 25, 1961 and April 21, 1958, efficiency reports rendered on plaintiff from 1944 to August Bl, 1961, and a statement by plaintiff’s commanding officer dated February 7,1962.
8. (a) On the morning of April 25, 1962, Major General J. E. Roberts appeared before the Board of Inquiry after all persons were present for the hearing. He told the plaintiff and his military counsel to leave the room. He had •intended to brief the Board after they left. Howevfer, he *189 recognized all but one of the members of the Board as officers who, as members of another Board, had previously heard the prepared briefing statement he proposed to read. Accordingly, he did not read the statement. Instead, he handed it to Major Bowman, the Recorder, who had not previously read or seen it. Major Bowman read the statement to himself. As soon as Major Bowman had finished, Major General Roberts left the room, having made no comments to the Board concerning the case or the procedure. Thereafter, the plaintiff and his counsel returned to the room and the hearing proceeded.
(b) The text of the briefing statement which each of the members of the Board had previously heard from Major General Roberts, in connection with an earlier case, and which the Recorder, Major Bowman, read for the first time immediately before the hearing in the plaintiff’s proceeding, was as follows:
In successfully meeting the increasing obligations of the Air Force in our nation’s defense, it is vitally important that our officer corps be maintained at the highest quality possible. As members of this Board your job is an important one. If we are to-improve the quality of our officer corps, our Boards of Inquiry must be thorough in their actions.
You have been furnished a file containing information which has been carefully evaluated by a Board of Officers in Headquarters TAC. The members of that Board have determined from the information furnished them that the respondent should show cause why he should not be relieved from active duty and discharged from all commissions and appointments in the USAF. The burden rests with the respondent to present evidence to refute, rebut or mitigate the evidence presented by the Air Force. The privilege to serve as an officer is one which can and must be withdrawn when his efficiency or conduct does' not measure up to the high standards expected of an Air Force officer.
The Board need not limit itself to the documented case. It may actively seek out additional information which the members feel is required to arrive at a proper finding. The Board should guard against the introduction of irrelevant testimony, evidence or argument, or an unwarranted sympathetic attitude toward the respondent, which might cause the Board to neglect its *190 responsibility to protect the best interests of the Air Force. The Board must carefully weigh and evaluate all facts and its findings and the recommendation must be consistent with the evidence presented. It must be borne in mind by the Board members that a recommendation for retention which is inconsistent with the actual facts of the case can have great impact upon the Air Force and the officer corps particularly for the reason that such recommendation is final and reinitiation of the case without the benefit of new evidence is not possible.
The procedures outlined in the Guidance Manual for Boards of Inquiry adequately protect the interests of the respondent.
A matter of great importance is the type of discharge certificate recommended for officers who are ordered before Boards of Inquiry because of misconduct. The Secretary of the Air Force places great weight on the Board findings; therefore, when discharge is recommended, it is essential that the type of discharge be in consonance with the character of service rendered by the respondent. Boards of Inquiry must insure that a higher type of discharge certificate than warranted is not recommended by them.
The Board of Inquiry must never forget that continued service as an officer is not an inherent right, but is a privilege which may be terminated when such action has been determined to be in the best interest of the Air Force. It is emphasized that the Air Force has no place for officers who show themselves unworthy of officer status by either ineffectiveness or failure to live up to the exemplary standards of conduct and morality demanded therefrom.
The interests of the Air Force being paramount, Board members should exercise extremely high personal vigilance to preclude undue compassion for the respondent affecting their decision. Further, Board members must remain constantly aware of the main issue to be resolved and must not allow that issue to become confused through technicalities or tactics employed by the respondent, or his counsel. > It should be emphasized that the Show Cause hearing is administrative in nature and is not subject to the rules and procedures governing court action.
_ Consideration of the factors which I have just mentioned, together with the procedures outlined in the Guidance Manual and the policies prescribed in AFR 36-2, should enable you to process the case in the best possible manner.
*191 9. The forms of briefing statement used by different commands in the Air Force varied. Late in 1957, the Tactical Air Command, in a communication apparently designed to encourage, among other, more rigorous procedures, more forceful briefing of Boards of Inquiry, complained that generally the commands were not adequately separating undesirable officers, since one out of three show cause actions during the year 1957 had culminated in the retention of the officer, whereas review of show cause actions for 1956 and 1957 for the Tactical Air Command at Langley Air Force Base, Virginia, showed that not a single officer was retained. These statistics were interpreted by the Vice Commander of the Tactical Air Command at Langley, writing for the Commander, as indicating that responsible commanders had exercised sound judgment in the initiation and conduct of such cases. The record does not disclose whether the relatively higher percentage of eliminations at Langley Air Force Base resulted from more careful selection of cases to be processed or the application of more rigorous standards of prosecution or decision to the cases selected. The communication encouraged commanders to give their personal attention to a revitalized elimination program, based on new streamlined procedures, then soon to be published, and stated that “The timely identification and elimination of substandard officers will have a favorable effect on our ability to accomplish our mission.”
10. On August 7,1962, Colonel Carl M. Nelson, on behalf of the United States Air Force, notified Senator John Sparkman, of the United States Senate, by letter, that the briefing by Major General Boberts and the exclusion of the plaintiff and his counsel were “ill-advised,” that “although some of the language could be misconstrued, the over-all briefing was nonprejudicial,” that a study of the briefing procedures revealed that “the method and content of briefings used by the major air commands vary somewhat,” and that instructions were being issued to accomplish changes in the briefing to achieve uniformity and to insure that respondents and their counsel know what occurs.
11. Paragraph 13 of Air Force Begulations (AFR) 36-2 provides that the letter notifying an officer of his selection *192 to show cause will contain, as an enclosure, a Statement of Reasons “which, will set out in separate numbered paragraphs the basis for the action. * * * Each, paragraph will be complete as to the misconduct, inefficiency, inaptitude, or other inadequacy alleged and will state with as much particularity as possible dates, places, events, and persons involved.” In accordance with this paragraph, the following Statement of Reasons was served on the plaintiff:
Major Cole failed to properly discharge his duties as Base Housing Officer in that in early June 1961 he received a lawful order from the Base Commander to have certain quarters painted and made available to a certain party and did thereafter wrongfully fail to do so._
Major Cole has conducted himself in a maimer incompatible with exemplary standards of personal conduct in that on 8 July 1961 he absented himself without proper authority and remained so absent until about 1900 hours 5 July 1961.
Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 22 October 1961 at the Officers’ Open Mess, Sewart Air Force Base, Tennessee, he was conspicuously drunk and disorderly.
Major Cole has failed to demonstrate acceptable qualities of leadership required of an officer of his grade in that on 23 October 1961 he was drunk on duty.
Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on Y January 1962 he was placed under arrest by a patrolman of the Tennessee Highway Patrol and on 15 January 1962 was found guilty of operating a vehicle with defective headlights and without a valid operator’s license.
Major Cole has demonstrated a progressive falling off of duty performance resulting m an unacceptable standard of efficiency.
12. At the hearing, the Air Force did not call any witnesses to establish the charges against the plaintiff. Paragraph 18(c) of AFR 36-2 provided in pertinent part as follows:
The board is encouraged to invite witnesses to appear if the witnesses are reasonably available and if, in the opinion of the board, their testimony is essential or *193 will contribute materially to the case. Whenever practical in cases involving substandard performance, arrangements will be made for the respondent’s immediate commander or the individual responsible for preparing his effectiveness report (AF Form 77) to appear as a .witness before the board of inquiry. * * *
A statement by the immediate commander of the.plaintiff was made a part of the file but he was not called to. testify. The evidence does not show that the plaintiff requested that his immediate commanding officer appear as a witness before the Board. Nor is there any evidence as to. whether it .was or was not practical for him to appear as a witness.
• The supporting papers introduced by the Air Force totaled 155 pages. The plaintiff was given the opportunity to call any witnesses he wished to call. He indicated .that- he desired no witnesses but would take the stand under oath. He testified at length before the Board and offered 69 statements and copies of correspondence.
13. At the conclusion of the hearing, the Board made the following findings:
1. Major Cole did not fail to properly discharge his duties as Base Housing Officer in that in early June 1961 he received a lawful order from the Base Commander to have certain quarters painted and made available to a certain party and did thereafter wrongfully fail to do so.
2. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 3 July 1961 he absented himself without proper authority and remained so absent until about 1900 hours 5 July 1961. • . ■
3. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal conduct in that on 22 October 1961 at the Officers’ Open Mess, Sewart Air Force Base, Tennessee he was conspicuously drunk ..and disorderly.
4. Major Cole has not failed to demonstrate acceptable qualities of leadership required of an officer of his grade in that on 23 October 1961 he was drunk on 'duty.
5. Major Cole has conducted himself in a manner incompatible with exemplary standards of personal con-, duct in that on 7 January 1962 he was placed under arrest by a patrolman of the Tennessee Highway Patrol and on 13 January 1962.was found guilty of operating *194 a vehicle with defective headlights and without a valid operator’s license.
6. Major Cole has not demonstrated a progressive falling off of duty performance. However his performance has been average to marginal for an extended period of time. Records also indicate repeated instances of personal conduct incompatible with exemplary standards.
The Board recommended that the plaintiff be discharged from all appointments, that the nature of this dismissal be honorable, and that he receive readjustment pay.
Plaintiff was advised that the file would be forwarded to the Air Force Personnel Board for final review and that he could, if he desired, submit any brief or argument to the Personnel Board.
14. The uncontroverted evidence shows that July 3, 1961, had been declared a minimum effort day. This meant that only a skeleton crew had to remain on duty and unessential personnel could take leave. When Major Cole received notification that July 3 was to be a minimum effort day, he decided to take leave and to go to Alabama to pick up his family, then visiting there. His immediate commander was already absent, having gone fishing, so Major Cole notified his NCOIC of his plan to take leave to go to Alabama and to return early on July 5, in order to avoid driving on July 4. It had been Major Cole’s common practice not to bother his superior when taking leave for brief absences from duty on personal matters but merely to inform his NCOIC. There is no evidence that this practice had been specifically authorized. On this occasion, Major Cole intended to return the morning of July 5, but car trouble prevented him from returning until 1900 on that day. When the trouble with his car developed, he expected it to be correctible in a matter of minutes. Accordingly, he did not immediately call his commanding officer but waited until the trouble had been corrected and he had returned to the base, late in the afternoon, July 5. Then he called his commanding officer in response to a request that he do so, relayed to him by his NCOIC. His commanding officer stated that since the plaintiff arrived before midnight, he would not be charged with being absent without leave. As housing officer, the plaintiff frequently worked at night and did other extra work. He did not be- *195 lleve that the few hours away from the job would be too wrong due to the extra time he put in. The plaintiff was not charged at that time with being absent without leave.
15. The third charge, that on October 23, 1961, at the Officers’ Open Mess, the plaintiff was conspicuously drunk and disorderly, is supported by uncontroverted evidence that he was drunk.
Whether, on the basis of the evidence before the Board, his condition could be described correctly as conspicuous, in the particular setting in which it occurred, is far from clear. Others present were drinking too. Only one complained about the plaintiff and that complaint apparently stemmed primarily from the complainant’s resentment of the plaintiff’s dancing with his guest, although it was the established custom of officers to dance with the lady companions of other officers at the club. Others who observed the plaintiff did not regard his actions as objectionable. The evidence does not plainly establish whether this was because his being drunk was not conspicuous in the circumstances, or because, although drunk, he was friendly.
Whether the plaintiff was “disorderly” depends upon the interpretation of that term as used in the applicable regulations. If “disorderly” means, as it commonly does, that he was combative and contentious, or offensive in a manner calculated, in the attendant circumstances, to cause tumult or general disorder, the evidence is clear that he was not. There is no indication that he was pugnacious and considerable evidence that he was courteous and friendly. Indeed, the burden of the principal affidavit offered by the defendant to support the charge is that the officer who complained of him, and whose date Major Cole persuaded to dance, regarded Major Cole’s attitude toward his guest as over-friendly. The lady’s testimony was not offered and there is no direct evidence that she was offended by the plaintiff’s actions.
The record does not disclose that the Air Force customarily applied semantic standards in interpreting the expression “conspicuously drunk and disorderly” which would require a decision that, regardless of surrounding circumstances, excessive friendliness by an officer who has been drinking *196 is, as a matter of law, conspicuously disorderly conduct or incompatible with “exemplary standards of personal conduct” for Air Force officers.
If the conjunctive expression “conspicuously drunk and disorderly” as used in the regulations is to be read in its commonly accepted sense, there is no substantial evidence to support the Board’s decision that Major Cole was disorderly.
16. On October 25,1961, the plaintiff received a reprimand imposed under Article 15 of the Uniform Code of Military Justice. In that proceeding, he was charged both with the conduct discussed in finding 15 and with being drunk on duty. He accepted action under Article 15 when told it was being taken in lieu of administrative proceedings to discharge him. He was told that such administrative action would be initiated if there were a recurrence. In these subsequent administrative proceedings against him, he was charged with both of the two acts detailed in the Article 15 action. The Board found that the more serious charge of being drunk while on duty was not sustained.
17. On December 1, 1961, an effectiveness report covering the period from September 1,1961 to November 30,1961, was rendered on the plaintiff. The reporting officer stated in part:
As Base Housing Officer, Major Cole has continued to demonstrate that he possesses the knowledge and capability of operating his section and I believe at the present time has attained a degree of accomplishment not previously present in this section. In fact, Base Housing Supply was recently inspected by the 9AF I.G. Team and found to be in good order, whereas it had previously been rated “unsatisfactory.”
The reporting officer then discussed the actions on October 22 and 23, 1961, which led to the Article 15 proceeding on October 25, 1961, and stated that since that time in October the plaintiff’s performance and conduct had at all times been “completely acceptable.”
On December 19, 1961, the indorsing official made- the following comment in section IX of the effectiveness report:
I have had 2-3 contacts each week with Maj. Cole during the period of this report and concur with the comments and ratings of the Reporting Official. Maj. *197 Cole has the capacity and capabilities of being a competent officer in his grade. And most of the time he demonstrates these attributes. However, he has permitted his personal life and off-duty actions to reflect unfavorably on himself on several occasions. He appears to be making an honest effort to overcome or correct his personal problems at this time.
Oh December 26, 1961, the Base Commander added the following indorsement to the effectiveness report:
' Based upon fairly frequent contacts that I have had with Major Cole, I concur with the comments and ratings of the Reporting and Indorsing Officials. As a result of two lengthy personal consultations that I have had with Major Cole, I believe that his future personal actions will show improvement.
On January 5, 1962, Brigadier General Frederick J. Sutterlin ■ added the following final indorsement to the effectiveness report:
Generally ! concur with the Basic Evaluation and subsequent indorsements. However, at my direction, Major Cole was previously warned on or about 24 October 1961 that elimination action would follow a recurrence of personal sub-standard conduct. In view of the comments reported in Section VII of the above rating, -1 have directed that appropriate elimination action be initiated.
It is apparent from the evidence in the record that the General was confused concerning the sequence of the warning and the events of October 23-24, 1961. There was no recurrence of personal substandard conduct after October 24, 1961. The General was apparently under the mistaken impression that the instances of personal substandard conduct referred to in section VII of the report occurred; after October 24,1961, whereas they had occurred before the,warning and there is no evidence of conduct thereafter that might be regarded as substandard, with the possible exception of the minor, and inadvertent, traffic violation, described in finding 19, which did not occur until after General Sutterlin’s indorsement on the effectiveness report.
18. (a) On January 7,1962, the plaintiff was convicted by a civilian court of driving with improper headlights and without proper license. This was after the decision had been *198 made to initiate elimination action against him. The un-controverted evidence shows that two of the four headlights had burned out on the plaintiff’s car and that he did not know the lights were out until he was stopped by the Highway Patrol. He immediately had the defective lights replaced. The plaintiff had a driver’s license issued in Casablanca. He thought service personnel were permitted to use such licenses and had been confirmed in that impression by the approval of Ms Casablanca license by the Air Police on several bases, including the Sewart Air Force Base, after his return to the United States. When the plaintiff first reported at Sewart Air Force Base, a base permit was issued to him on the basis of the license. The Air Police authorities admitted that, at the time the plaintiff’s base permit was issued, they had not known that such licenses could not be used in Tennessee, although they discontinued approving such licenses subsequently.
(b) To whatever extent the fifth numbered finding by the Board implied willful wrongdoing by the plaintiff, or a departure on Ms part from exemplary standards of personal conduct within any reasonable construction of those terms in accordance with their commonly accepted meaning, it was arbitrary and not supported by substantial evidence.
19. (a) The sixth of the Reasons stated in the documents served upon the plaintiff prior to the Board hearing was “a progressive falling off of duty performance resulting in an -unacceptable standard of efficiency.” The Board of Inquiry found that tMs charge was not sustained. It found instead, however, that Ms performance had been average to marginal for an extended period of time. The sixth Reason found by the Board for its decision was not among the reasons included in the Statement of Reasons that had been served on the plaintiff.
(b) The regulations require that marginal services over an extended period of time be indicated by effectiveness reports covering two or more assignments and rendered by at least two different officers. The evidence discloses only one effectiveness report that might be regarded as marginal. In that report, dated March 12, 1958, the reporting officer rated the plaintiff as “an acceptable officer” but the indors *199 ing officer reduced the rating to “marginal.” Other effectiveness reports during the applicable period included better than average ratings.
20. (a) On May 25,1962, the plaintiff filed an appeal from the findings and recommendation of the Board in which he alleged command interference by Major General Roberts, and specifically challenged findings 3,5, and 6.
(b) The Air Force Personnel Board met on June 13,1962. In its discussion the Board noted:
The record of the Board of Inquiry reveals substantial derogatory incidents to justify their _ findings. The allegations which were refuted or partially refuted by respondent mitigate the seriousness of the overall charges in some respects, yet the unrefuted incidents are of such a nature to deny respondent’s continuation as an Air Force officer. * * *
The Air Force Personnel Board thoroughly examined the entire file, record of the Board of Inquiry, and respondent’s rebuttal to the findings and recommendations of the Board of Inquiry, and concurred with the findings of the Board of Inquiry. The Board of Inquiry recommended the award of an honorable discharge. However, the Personnel Board determined the award of a General Discharge with the award of readjustment pay appropriate in this instance.
The Board found—
* * * that respondent has failed to successfully refute, rebut, or raise serious doubt as to the allegations contained in the Statement of Reasons.
And recommended—
That Major Edward W. Cole, AO 733 278, be discharged from the United States Air Force, that he be given a General Discharge Certificate, and that he be entitled to readjustment pay.
(c) In reaching its decision, the Board discussed and relied upon an alleged incident on November 1, 1957, that was not included among the stated reasons for action in this proceeding, although the papers relating to the disciplinary punishment imposed under Article 15, on April 17,1958, as a result of that occurrence, were among the papers available to the Board of Inquiry.
*200 (d) Although the plaintiff’s appeal to the Personnel Board alleged command interference through the briefing of the Board of Inquiry, the Personnel Board did not mention or comment on that incident.
21. (a) On July 27, 1962, the Secretary of the Air Force directed that plaintiff be honorably discharged from the Air Force.
(b) On August 7, 1962, Senator John Sparkman was notified by the Department of the Air Force that the plaintiff would be given an honorable discharge.
(c) On that same day, the command at Sewart Air Force Base was told to advise the plaintiff that he was to be separated as of August 81,1962, that the orders to be issued in processing the plaintiff’s discharge should include:
“a) Eeason and authority: (SDN 650) Paragraph 37, AFE 36-12,”
that he was to be given an honorable discharge, and that he was to be paid readjustment pay on the basis of 18 years, 3 months, and 11 days active service at one-half month’s pay for each year of service.
22. (a) AFE 36-12 relates to “Administrative Separation of Commissioned Officers and Warrant Officers of the Air Force.” Section D of AFE 36-12 relates to “Involuntary Discharge.”
Paragraph 37 of AFE 36-12, which is found in section D, relates to “Discharge As Eesult of Board Action.” It includes, as subparagraph (c), the following provision:
Eeserve and temporary officers who are discharged honorably or under honorable conditions under this paragraph who are otherwise eligible, may be entitled to readjustment pay.
(b) Paragraph 8 of AFE 36-12, which is found in section A and relates to “Eeadjustment Pay,” provides:
Current legislation provides for the payment of readjustment pay to certain Eeserve and temporary officers who. are involuntarily separated from active military service. AFE 35-10, as amended, and AFM 173-20 contain detailed information relative to procedures for determining eligibility for and payment of readjustment pay. Eeadjustment pay, when authorized, is payable in an amount equal to one half of one month’s basic *201 pay of the grade in which, serving at the time of separation multiplied by the number of years of active Federal service creditable to the officer át that time, not to exceed 18 years or a maximum1 of 9 months’ basic pay, subject to certain restrictions as outlined in AFR 35-10, as amended.
$ H* % * • *
(c) Part II of a message, entitled ALMAJCOM 1368/62, distributed August 1, 1962, provided for an interim change, effective June 29, 1962 until December 1962, in the regulations previously effective (AFR 36-12 and AFR 35-10) relative to readjustment pay. It included the following provisions which amended parts of AFR 36-12 applicable to determination of entitlement to receive readjustment pay and computation of readjustment pay:
d. 8b. Determination of Entitlement -' to Receive Adjustment Pay.
(1) Release From Extended Active Duty. An officer who is released from active duty involuntarily under Section H is entitled to readjustment pay, except as otherwise indicated in that section.
(2) Honorable Discharge. An officer who is honorably discharged under Section D, except paragraph 37, is entitled to readjustment pay if the paragraph under which his separation is effected specifies that an officer discharged under that paragraph is entitled to readjustment pay provided he is otherwise eligible. .[Underscoring supplied.]
(3) Honorable or General Discharge, Paragraph 87. An officer who is honorably discharged or who is discharged under honorable conditions under paragraph 37 of Section D is entitled to readjustment pay unless the Secretary of the Air Force determines that discharge is being effected for reasons involving moral or professional dereliction. * * *
H.* * ❖ ❖ ❖
e. 8c. Computation of Readjustment Pay.
' (1) An officer who is determined to be entitled to readjustment pay in accordance with 8b(l) or (2) above, if he is otherwise eligible, will receive a lump sum payment equal to two months basic pay in the grade in which serving at the time of separation multiplied by the number of years of creditable active Federal service, computed in accordance with paragraph 7b (3), AFR 35-10, as amended, not to exceed 18 years.
*202 (2) An officer who is determined to be entitled to readjustment pay in accordance with 8b (3) above, if he is otherwise eligible, will receive a lump sum payment equal to one-half of one month’s basic pay in the grade in which serving at the time of separation multiplied by the number of years of creditable active Federal service, computed in accordance with paragraph 7b(3), AFR 35-10, as amended, not to exceed 18 years.
$ ‡ ‡ ‡
(d) A communication dated August 23, 1962, from the Retirements and Separations Division, Directorate of Military Personnel, states that:
* * * A determination as to entitlement to Readjustment Pay was based on an overall review of the case and the fact that there were no indications of moral or professional dereliction which would preclude the payment of readjustment pay. Entitlement to readjustment pay and computation of such pay in this case is governed by paragraph 8b(3) and 8c(2), AFR 36-12, as stated in Part II, paragraph 2d and e, ALMAJCOM Message AFPMP 1368/62. Major Cole may apply for authorization to enlist under the provisions of AFM 39-9. [Underscoring supplied.]
That communication also contained the following additional statement:
M/R: Wire fr TAC re readj pay and officer being allowed to reenlist. DOS scheduled for 31 Aug 62.
(e) The plaintiff’s honorable discharge was under paragraph 37, section D of AFR 36-12, relating to “Discharge As Result of Board Action.”
There were no moral or professional derelictions that would preclude plaintiff’s receipt of readjustment pay.
His readjustment pay was to be determined on the basis applicable to officers discharged under paragraph 37, in accordance with paragraphs 8b(3) and 8c(2) of the interim change in the regulation quoted in finding 22(c), which provided that such officers should receive a lump-sum payment equal to one-half of one month’s basic pay multiplied by the number of years of creditable Federal service, not to exceed 18 years. It does not appear that those provisions of the *203 interim change in the regulations (8b(l), 8b(2), or 8c(l)), pursuant to which officers released from active duty under section H of AFE 36-12, or honorably discharged under paragraphs of section D of AFE 36-12, other than paragraph 37, are entitled to readjustment pay equal to 2 months’ base pay, times their years of creditable service, are applicable to the plaintiff.
23. (a) Paragraph 24 of AFE 36-2 provides in pertinent part that the plaintiff shall be furnished with a copy of the proceedings of the Air Force Personnel Board.
(b) On August 10,1962, the plaintiff submitted a written request to Headquarters, United States Air Force, for all written memoranda and opinions relating to the disposition of the matters raised on the appeal.
On August 31,1962, the plaintiff was furnished a copy of the proceedings of the Air Force Personnel Board convened on dime 13, 1963. The plaintiff has never been furnished a copy of any proceedings where the general discharge recommended by the Personnel Board in the June 13 proceedings was changed to an honorable discharge or a copy of any decision of the Personnel Board with regard to plantiff’s complaint about the briefing of the Board by Major General Eoberts. Insofar as this record shows, the Personnel Board did not act specifically on the complaint about the briefing. The honorable discharge appears to have been directed by the Secretary of the Air Force without regard to the recommendation of the Personnel Board that the plaintiff be given a general discharge certificate.
24. The plaintiff was discharged effective August 31,1962, and was paid readjustment pay of $5,670 minus $1,729.16 for the U.S. Air Corps Eeserve Bonus paid plaintiff in 1946 for service from November 21,1942, to May 5,1946, or a total of $3,940.84.
25. The plaintiff duly appealed his claims to the Air Force Board for Correction of Military Eecords and his application was denied on March 27, 1963. The plaintiff has exhausted all administrative remedies.
26. On April 15,1963, the Air Force recomputed the plaintiff’s readjustment pay by deducting his service in the Air Corps Eeserve from his total active Federal service, instead *204 of deducting the Eeserve Bonus from the readjustment pay. This recomputation resulted in a total of $4,725, which left $784.16 due the plaintiff. A check for that amount minus withholding was sent to the plaintiff.
27. Before his discharge became effective, the plaintiff questioned the amount of readjustment pay and requested authorization to reenlist to complete his service for retirement. The Tactical Air Command at Langley AFB, Virginia, forwarded the request to Headquarters, United States Air Force.
Headquarters, in reply, stated, as indicated in finding 22(d), that the plaintiff’s readjustment pay was to be determined on the basis applicable to officers honorably discharged under paragraph 37 and that the plaintiff might “apply for authorization to enlist * *
Neither the plaintiff nor his counsel was ever informed by the Air Force of this decision of Headquarters, United States Air Force, concerning reenlistment. On the contrary, the plaintiff was told that his request concerning reenlistment and readjustment pay had been denied. After his discharge, the plaintiff wrote the Secretary of the Air Force concerning reenlistment and was notified that authority to reenlist had to be established at the date of separation.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover. The amount of recovery will be determined pursuant to Rule 47 (c) (2).
In accordance with the opinion of the court, a stipulation of the parties, and a memorandum report of the commissioner recommending that the court enter judgment in favor of the plaintiff and against the defendant in the amount stipulated by the parties, it was ordered on November 8,1965, that judgment for the plaintiff be entered for $16,317.16.

 The problem of command Influence Is the subject of proposed legislation; See S. 749, 89th Cong., 1st Sess., Ill Cong. Rec. 1234-1235 (1965). For general Information on military administrative separations -see Hearings, Subcommittee on Constitutional Rights, Senate Judiciary Committee, pursuant to S. Res. 260, 87th Cong., 2d Sess., February-March, 1962, on “Constitutional Rights of Military Personnel.”